## JOHN L. FITZHUGH v. THE STATE.

1. CRIMINAL LAW. *Practice.* Where the record shows that fourteen grand jurors were appointed at the term at which the indictment was found, and no notice of the irregularity was taken in the court below, it is too late to make such objection in the Supreme Court.

2. SAME. *Oath of the jury.* Where in a trial for murder, the record after reciting the defendant plead not guilty, joinder of issue and the names of the jurors polled, " who were elected, empaneled and sworn to well and truly try the issues joined," and does not contain the common law form of " well and truly try and true deliverance make," etc. *Held,* that while it is best that the long established and recognized forms should be observed, the record was sufficient.

Fitzhugh *v.* The State.

3. SAME. *Evidence.* The general character of the deceased being in issue, it was not error for the court to exclude what the witness had heard of particular acts upon which collateral issues might arise.

4. SAME. *Evidence.* Threats and menacing and provoking language by deceased to defendant if communicated, are allowed to show the *animus* of the deceased and the state of mind of defendant towards the deceased.

5. SAME. *Evidence.* The character of the deceased for violence should be considered in determining whether by overt act of the deceased the defendant had just apprehension of reasonable danger.

6. PRACTICE IN SUPREME COURT. To reverse a judgment upon the ground that the evidence does not sustain the verdict, there should be preponderance against it.

FROM DYER.

Appeal in error from the Circuit Court of Dyer county. J. T. CARTHELL, J.

T. E. RICHARDSON for Fitzhugh.

ATTORNEY-GENERAL LEA for the State.

DEADERICK, C. J., delivered the opinion of the court.

Plaintiff in error was convicted of murder in the second degree in the circuit court of Dyer county, in killing John Powers, and has appealed in error to this court.

It is maintained in an elaborate and able argument by his counsel, that the judgment should be reversed for errors of law committed in the progress of the trial, as well as because the evidence does not justify the verdict. It is objected that the record shows that fourteen grand jurors were appointed at the term at which the indictment was found. Apparently this is

so, but it is probably a clerical mistake, if not no-
notice seems to have been taken of this irregularity in
the court below, and it is too late to make such ob-
jection, in this court, for the first time.

Exception is also taken in this court to the form
of the oath administered to the jury in the trial of
the cause. The entry of the record is: "Comes the
attorney-general on behalf of the State, and the de-
fendant, John L. Fitzhugh, who pleads 'not guilty?'
and puts himself on the country for his trial, and the
attorney-general doth the like, whereupon comes a jury,
etc., who were elected, empaneled and sworn *to well
and truly try the issues joined.*" The objection is that
the common law form of "well and truly try and true
deliverance make," etc., was not used. Although we
think it is best that long established and recognized
forms in such cases should be observed, yet the jury
in this case were charged with the trial of the single
issue made of guilty or not guilty, and this sufficiently
and distinctly appears of record.

Frank Perry testified that he knew Powers, the
deceased, very well, lived five miles from him, and his
reputation was good where he (witness) lived. On
cross-examination by defendant he said he could not
give the name of any one who had spoken of him
as a peaceable man. That he had only heard him
spoken of as a peaceable man since his death. De-
fendant's counsel also asked witness if he had heard
that Powers had shot his own son-in-law, to which he
answered "yes." He was also asked if he had heard
that Powers was hiding or living away from his family.

The court here interposed and said no inquiries must be made as to any particular matter of conduct.

It is insisted that the court erred in rejecting the evidence as to particular matters of which witness had heard, and also in refusing to exclude so much of witness' statement as details that he had only heard Powers spoken of as a peaceable man since his death.

We are of opinion that there was no error in excluding what the witness had heard of particular acts, and this we understand to have been the ruling of the court: 6 Baxt., 465. The inquiry was as to the general character of deceased, not as to hearsay evidence of facts of particular acts, upon which collatteral issue might arise. But even if the testimony in chief as to this general character might have been excluded by the court, yet the court upon the cross-examination might well leave the matter of the value of the testimony to be determined by the jury: 1 Greenl. Ev., sec. 461.

It is further insisted that the court erred in its instructions to the jury in respect to the threats made by deceased against defendant. The court said to the jury: "Previous threats made by deceased against the prisoner and communicated to him before the difficulty, should be considered by the jury to understand the state of mind of the prisoner and the apprehension of danger under which he acted, and to explain his conduct at the time of the difficulty in connection with the other evidence and circumstances of the case." And the court adds: "If the testimony shows that

the deceased used insulting and provoking language about the defendant, and if it was communicated to him, or addressed directly to him before the difficulty, you consider that in ascertaining his state of mind and feeling towards the deceased."

In respect to the first part of the charge above quoted, it is almost in the exact language of this court in the case of *Little* v. *The State*, 6 Baxt., 494. And the subsequent part of the charge applies the same rule as to insulting and provoking language, and instructed the jury that they might consider that as well as threats in ascertaining defendant's state of mind towards deceased.

In this we think there is no error. This language and conduct was admitted as showing the *animus* of the deceased, and it was also to be considered with the other evidence, including the threats, in ascertaining the state of mind of defendant towards the deceased. Menacing and provoking language are likely to produce similar influences, and we cannot see that any prejudice to defendant could result from the charge as given.

The defendant requested the court to charge the jury "that the character of the deceased for violence should also be taken into consideration and weighed by the jury, in determining by whom the difficulty was sought and brought about, and also to the motives and purposes of the deceased when he met the defendant." The court declined to so charge upon the ground that he had already sufficiently charged upon the proposition submitted.

The court had charged the jury that "the character of the deceased for violence, as well as his animosity to defendant as indicated by words and acts at the time and before the difficulty, as well as the attitude of the parties, their relative strength and how they were armed, are all proper matters for the consideration of the jury in determining the question of reasonable apprehension of danger," etc. The court had also instructed the jury that to constitute reasonable apprehension of danger, there must be some words or acts, or demonstrations of some kind by deceased at the time of the killing, indicating a present purpose to do the injury. So that, in effect, the court did instruct the jury as requested, that the character for violence, etc., of deceased, should be considered in determining whether by overt act, etc., deceased had justified apprehension of reasonable danger, and thus began the conflict.

There was evidence of a number of serious threats by deceased against defendant—some of which were communicated. The testimony of several witnesses shows that he was a violent and dangerous man, and more powerful than defendant.

There are some other exceptions presented in argument, but we do not think there is any substance in those not specially mentioned.

The jury have returned a verdict of guilty, and it is insisted that this verdict is not warranted by the evidence. The facts are not very distinctly presented, but there is enough in the record to show that the parties met in the road; defendant on horseback and

deceased afoot; that defendant fired two shots before he dismounted—deceased not then being in sight of the witness, and probably not near enough to defendant to strike or offer to strike, with his walking-stick, which it appears was his only weapon. After defendant dismounted both are seen leaving the road, some distance apart—probably fifteen feet or more. After they got in the woods a third shot was fired, and witnesses heard a scream or groan; two other shots were afterwards heard, and Powers found dying with two wounds, both showing appearence of being powder burned. Davenport states that deceased face was towards his (witness') house, and defendant moved around between deceased and the house; that the parties passed out of his sight behind some trees before the third shot, and that it was a little while after the firing of the first two, and the subsequent shots.

Powers' stick was found broken in the woods, but it does not appear that defendant was struck or bore any marks of having been struck with it or other weapon.

It is pretty clear that deceased could not have been very near defendant when the first two shots were fired, as he was not seen until after defendant had dismounted, after firing the first two shots. From the facts disclosed it is probable that the deceased, being unarmed, except with his stick, did not seek to make any assault upon his well armed adversary, but sought the woods to avoid it, and it is certain that defendant left the road, and Davenport says defendant moved round between deceased and his (witness') house.

Fitzhugh v. The State.

To reverse a judgment upon the ground that the evidence does not sustain the verdict, there should be a preponderance of evidence against it, but in this case we are of opinion that the preponderance of evidence is in favor of the verdict.

The defendant has had a fair trial upon a full and correct charge upon all the material questions arising in the case, and the judgment must be affirmed.

PETITION TO REHEAR.

Upon petition to rehear, DEADERICK, C. J., delivered the following opinion:

An application to rehear has been presented in this case on behalf of the plaintiff in error, against whom a judgment was affirmed at a former day of this court, upon a conviction of murder in the second degree.

The ground principally relied on for a rehearing and reversal of the judgment is, that the jury was not sworn according to law.

The form of the oath to be taken by jurors in the trial of criminal cases, is not prescribed by statute in this State. The proper and regular form, and that usually administered is the common law form, and as stated in the original opinion in this case, we think it is best that long established and well recognized forms should be observed and adhered to. The record in this case recites that the jury were "elected, empaneled and sworn, to well and truly try the issue joined."

Counsel for plaintiff in error has furnished us with cases determined by the courts of last resort in Texas, Arkansas and Alabama, which do hold that under their statutes the oaths of the jurors must be in the language thereof, and if it appears that the language of the oath was "to say the truth in the premises," or "to try the issue joined," the judgment would be reversed for this error: 2 English (Ark.), 59; 5 Eng., 540; 1 Texas, 408; 60 Ala., 2; 47 Ala., 31.

More recent cases in the Alabama court have overruled the earlier cases; and it has been held by that court that the omission of the words "a true verdict to render according to the evidence," which are prescribed by the statute, will not vitiate the verdict: *Atkins* v. *The State,* 60 Ala., 45.

In Thompson & Merriam on Juries, it is said, if the oath administered differs materially from that prescribed by statute, it will be error: Sec. 299.

But if it is recited that the jury was duly sworn, it will be presumed that the proper oath was administered, and it is added that it may be questioned whether a recital that the jury was "sworn well and truly to try the issue joined between the State and defendant," should be regarded as an attempt to set out the oath actually administered: Sec. 299.

The swearing of the jury is always done in the presence and hearing of the defendant and his counsel. If the oath was not properly administered in fact, it would seem, from the character of the irregularity, that the proper practice would be, in analogy to our practice, in requiring irregularities in the em-

paneling of a jury known to defendant and his counsel to be excepted to at the time of their occurrence.

In same book on Juries it is said: "It is too late, after verdict, for a party to object to the form of an oath administered. for the first time. He is not permitted to take the chances of a favorable verdict, and make his objection subsequently": Sec. 275. And the authors quote Chief Justice Shaw as saying, "if a party knows of any prejudice entertained by a juror, and makes no exception when the jury is empaneled, however good the cause of challenge, it must be deemed to be waived," otherwise knowing of a secret taint to which the verdict may be exposed, he takes his chance of a favorable verdict, reserving a power to impeach it if against him.

This we regard as sound law, and in principle equally applicable to an infirmity attaching to the whole jury, as in cases where the objection lies to one or more, less than all.

Whether, therefore, we consider the record as purporting to set out the oath as administered, or as a. recital only of the fact that the jury was sworn to try the issues, we are of opinion, the fact of the form of the oath being known to counsel and to defendant, it cannot now be objected, for the first time, that it was insufficient in form. We do not consider the objection as going to the merits. If it be conceded that the record purports to set out the oath that was administered, it commits to the jury the trial of the issue made between the State and the defendant, of "guilty or not guilty." Upon this issue they

were fully instructed by the court as to their duty, and responded by their verdict fully to the issue committed to them, and thus have done all the law required of them, if they had been sworn in the most formal manner.

Regarding the objection as technical and formal, and being satisfied with the correctness of the verdict and judgment, we are all of opinion that the rehearing should be refused and judgment rendered here in affirmance of the judgment below.