JOE CHAFFIN

*v.*

STATE OF TENNESSEE

354 S. W. 2d 772.

(*Nashville,* December Term, 1961.)

Opinion filed March 7, 1962.

TURNER & TURNER, Carthage, MADDUX & CAMERON, Cookeville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, for defendant in error.

MR. CHIEF JUSTICE PREWITT, delivered the opinion of the Court.

Plaintiff in error, Joe Chaffin, hereinafter referred to as defendant, was convicted of voluntary manslaughter and sentenced to serve three (3) years in the State Prison.

The record presents three assignments of error.

1. The evidence preponderates against the verdict and in favor of the innocence of the accused.

2. The trial judge refused to permit witnesses offered by the defendant to testify that the deceased had a reputation of carrying a pistol; defendant was not permitted to prove deceased was quarrelsome, desperate and revengeful by showing specific acts of that nature toward third persons; and defendant was not permitted to show that deceased had been involved in disputes over the boundary lines with other adjacent land owners which resulted in threats against them by the defendant.

3. The trial judge permitted the State to make exhibits to the rebuttal testimony of a State's witness, a court decree, a will, and a deed.

The proof discloses that the deceased, Bush, was shot three times on March 18, 1961, which resulted in his immediate death.

It appears that the defendant and his uncle owned a farm adjacent to a farm owned by the deceased. A boundary line dispute had existed between them for some time. The defendant had been carrying a pistol for eleven months prior to the event in question when he went on that portion of the farm he owned with his uncle near the boundary line with the deceased's farm.

Deceased had the boundary line surveyed and at the time he was killed he was engaged in the erection of a fence on what defendant considered to be a part of the farm owned by him and his uncle.

There is considerable proof to show that the deceased had made violent threats toward the defendant, that he had said he would fence his property or kill anyone who tried to interfere, and that he carried a pistol for that purpose.

We think the preponderance of the evidence indicates the deceased was somewhat contentious and unreasonable about the boundary line dispute, and character witnesses offered by the defendant tended to show that deceased was a man with a violent disposition, while on the other hand, the State introduced several character witnesses tending to show to the contrary.

On the day before the homicide, the defendant had stopped by deceased's home and talked to deceased about not erecting the fence between their land until defendant had an opportunity to have it surveyed.

Defendant testified that the deceased had agreed to allow him thirty days for that purpose.

The defendant testified that the deceased had told him on that day "I was aiming to fence and says I am starting and said I am going to fence if I have to kill everybody involved."

The following morning, the date of the homicide, the defendant with his younger brother, went to the place where the boundary line was in dispute for the purpose of determining how far deceased was encroaching upon defendant and defendant's uncle's property. Defendant carried a pistol with him.

Defendant had been there the day before and noticed that a wire which has been considered to be the fence between the two farms had been taken down and rolled up by the deceased. As defendant and his brother approached the scene they heard deceased erecting the fence. Defendant called to the deceased. Deceased made no response to this call but when defendant called the second time, after approaching a little nearer to the deceased, the deceased replied "G— d— it, I heard you the first time."

Defendant reminded the deceased of his promise not to fence at that time. Then, according to the defendant's testimony, deceased admonished the defendant, "If you don't get the hell out of here, you are going to get your killing."

The deceased walked past the defendant, set his sledge hammer against a fence post, dropped his claw hammer he was holding in his hand, and reached for his right

pocket, whereupon the defendant took from his pocket the pistol he was carrying and shot the deceased.

Defendant testified that deceased was about twenty-five feet from him when the homicide occurred. No pistol was found on the deceased after his death and he had no weapon other than a hawk-bill knife, not further described in the record.

Defendant was a man twenty-seven years of age and deceased was fifty-nine years of age. Defendant's brother with him was eighteen years of age. There is no evidence relative to the size, strength, or physical condition of any of the three men.

Reference is here made that the case of *Toler v. State*, 152 Tenn. 1, 260 S.W. 134, is more nearly in point on the issue of self defense.

In the present case difficulty had existed between the defendant and the deceased for a considerable period of time over the boundary line between their farms. Considerable effort was made on the part of the defendant to show that the deceased was encroaching upon defendant's land.

The State insists that the actions of the deceased in walking to the left of the defendant and placing his sledge hammer down by a post, and then turning back as testified to by defendant, indicates that he was somewhat slow and deliberate for a person, who intended to shoot another and if he intended to cut him with his knife, it appears that he would have at least gotten his knife out of his pocket since defendant, after the deceased made a gesture toward that end, had sufficient time to reach in his pocket and get the pistol he used to kill the deceased.

Further, the shot that entered the left side of deceased's face and came out in his neck, was a circumstance from which the jury could have inferred that deceased was on the ground and defendant was up over him when it was fired.

■■ The above state of facts made it a jury question as to whether at the time he was in danger of death or great bodily harm. Evidence of the general reputation for peace and violence in the community was admissible.

The trial judge allowed evidence of any threats made by the deceased toward the defendant that had been communicated to the defendant, and included in the testimony related by most of the witnesses on the subject, was the fact that the deceased exhibited to them a pistol by which he intended to carry out such threats and the defendant was permitted to testify that he knew the deceased carried a pistol.

The trial judge refused to permit proof that the deceased had a reputation for carrying a pistol. He would not permit character evidence relative to specific traits or specific habits, nor would he permit proof of specific threats made against third persons by the deceased, including threats to adjacent land owners.

The trial judge would not permit proof of difficulties deceased had with adjacent land owners unless the defendant was connected with these disputes.

■ We are of the opinion that it was proper to sustain objections to evidence of specific acts of the deceased toward third persons. *Jackson v. State,* 84 Okl.Cr. 138, 179 P.2d 924; Wharton on Homicide, Third

Edition, Section 253, p. 413; Wharton's Criminal Evidence, Vol. 1, Sec. 109, p. 403.

Defendant cites Underhill's Criminal Evidence, 4th Edition, Sec. 562, p. 1113, as authority for his position. This authority, however, only says that evidence to show deceased was a quarrelsome, desperate and revengeful man is admissible if known by the defendant. It is not authority for the proposition that these traits may be shown by specific acts.

A large portion of this record is concerned with the question of whether the defendant or the deceased was right in the controversy about the boundary line dispute. This evidence is immaterial to the main question.

We have considered all assignments of error, find them without merit and the judgment of the lower court is affirmed.

BURNETT, FELTS, WHITE, and DYER, JUSTICES, concur.