Thomas WILLIAMS, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

June 12, 1978.

Petition to Rehear Denied August 7, 1978.

Jay Fred Friedman, Memphis, for petitioner.

Brooks McLemore, Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, for respondent.

OPINION

FONES, Justice.

The question addressed in this opinion is whether a defendant who has laid a proper foundation by pleading and evidence

presenting the issue of self defense may adduce proof of specific acts of violence committed by the victim [1] against third parties, knowledge of which has been communicated to defendant prior to the homicide, for the purpose of showing defendant's state of apprehension.

Defendant was convicted of the second degree murder of one Morris Webb and sentenced to fifty years incarceration. Defendant admitted that he killed Webb, but alleged that he did so in self-defense. The trial judge allowed defense witness Fred Parker to testify that Webb had a reputation for violence, but the judge sustained the State's objection to testimony by Parker concerning specific acts of violence directed against Parker and his wife by Webb.

Defendant relied upon *Holt v. State*, 170 Tenn. 76, 92 S.W.2d 397 (1936) as authority for the admissibility of Parker's testimony.

The Court of Criminal Appeals affirmed the conviction and the incompetence of Parker's testimony, expressing the opinion that *Holt* was overruled sub silentio by this Court in *Chaffin v. State*, 209 Tenn. 590, 354 S.W.2d 772 (1962), and noting that *Chaffin* was followed in *Broz v. State*, 4 Tenn.Cr.App. 457, 472 S.W.2d 907 (1971), and *Henley v. State*, 520 S.W.2d 361 (Tenn. Cr.App.1974). We granted certiorari to consider the conflict between *Holt* and *Chaffin*.

The State's proof established that Webb was at the home of his mother at about 9:00 p. m. on December 24, 1975, when the defendant, accompanied by a woman and a child, drove his pick-up truck into the alley behind the apartment and began honking his horn. Both Webb's mother and a neighbor who was sitting in his car in the alley testified that Webb was shot immediately after opening the door, and that he had nothing in his hands. No weapon was found near his body.

The defendant was apprehended later that evening. A single-shot shotgun containing a spent shell and smelling like it had been recently fired, was found in defendant's truck. Defendant admitted to the arresting officers that he had killed Webb.

Defendant testified that he had returned from a hunting trip that evening, and that he had subsequently picked up the woman and child who were with him when he drove up to Webb's mother's house. The child had requested money from the woman to go skating, which request was denied, whereupon the child got out of the truck, and defendant, hoping to convince the woman to give the child the money, blew his horn to get the child to return to the truck.

According to defendant, Webb came out of his mother's apartment armed with a pistol, and in the time it took Webb to walk briskly approximately twelve feet, defendant took his shotgun from behind the seat, broke it, loaded it, closed it, aimed it, and shot Webb from the window of the truck. Defendant and another witness testified that Webb had assaulted the unarmed defendant with a knife approximately one week earlier.

In *Holt v. State, supra,* defendant testified, out of the presence of the jury, about five recent violent acts committed by deceased against third parties that had been told to him by five different persons. The trial judge ruled the five incidents incompetent and defendant assigned that ruling as error on appeal.

The *Holt* court correctly observed that in both *Jackson v. State*, 65 Tenn. 452 (1873), and *Fitzhugh v. State*, 81 Tenn. 258 (1884), similar testimony had been held incompetent, without discussion of the reasoning supporting the rule. Decisions of the appellate courts of Michigan, Montana, Indiana and Massachusetts were examined, wherein the view was expressed that defendant's state of mind and apprehension of danger in allegedly acting in self-defense are more accurately revealed to the jury by his knowledge of specific acts committed by deceased of which he had been informed, than by his knowledge of deceased's general reputation, and that such testimony by the defendant should be admitted as an exception to the general rule limiting character evidence to general reputation. The *Holt* court concluded as follows:

"This exception to the general rule restricting character evidence to general reputation is supported by reason. When a case narrows to the inquiry as to the degree of reasonableness of the apprehension in the mind of the defendant when he finds himself in a position in which he must instantly determine when, or whether or not, to strike, and when it is conceded that it is permissible for his judgment to be affected by the character of his antagonist for violence, there would seem to be no escape from the

---

1. "Victim" and "deceased" are used interchangeably in this opinion. The same rule applies in all assault and homicide cases.

further concession that his judgment would be even more directly affected by knowledge of recent specific unrestrained violence. All men well know that the average mind responds more readily to knowledge of specific conduct than to impressions based on general reputation. To illustrate: An officer in performance of his duty approaches B to place him under arrest. Defying and resisting arrest, B threatens the officer. What more convincing basis of apprehension of danger from B could that officer possibly have than reliable information that two days before B had shot and killed another officer approaching him on a like mission, and that week before last he had committed a like offense, and that he was charged with having slain in brutal and violent fashion an inoffensive citizen? Is it possible that the court should decline to permit this officer, when on trial for shooting down B, to tell the jury that he was apprehensive of death or great bodily harm and that he fired as quickly as he did because this apprehension was intensified by knowledge of these specific recent offenses, strongly indicative of the readiness of B to repeat?

.        .        .        .

"[W]e are of opinion that the learned trial judge should have admitted this testimony *by the defendant*, subject to the right of the state to disprove defendant's claim that he had received such information . . . ." (Emphasis added.) 170 Tenn. at 90–91, 92 S.W.2d at 402.

In *Chaffin,* a serious dispute over the boundary line between their farms resulted in defendant killing deceased with a pistol. The Court found that defendant's evidence was sufficient to present a jury question on the issue of self-defense and thus evidence of deceased's general reputation for peace or violence in the community and evidence of threats made by deceased toward defendant that had been communicated to defendant were properly admitted. The Court's treatment of the admissibility of the specific type of evidence we are considering here was a model of brevity and did not mention *Holt* or any other Tennessee case. All that we know from the decision about the source or substance of the testimony adduced in the trial court is the statement that the trial judge, "would not permit character evidence relative to specific traits or specific habits, nor would he

permit proof of specific threats made against third persons by the deceased, including threats to adjacent land owners." 209 Tenn. at 595, 354 S.W.2d at 774. In ruling upon the action of the trial judge in excluding that evidence, the Court said, "We are of the opinion that it was proper to sustain objections to evidence of specific acts of the deceased toward third persons." 209 Tenn. at 595, 354 S.W.2d at 774.

If the testimony offered on behalf of defendant were by witnesses other than defendant himself, we are of the opinion that *Chaffin* would not be in conflict with *Holt.* Defendant testified in *Chaffin* but there is no indication in the opinion that he attempted to relate what had been told him regarding deceased's acts of violence against others which would bring the decision into conflict with *Holt.* The rule approved in *Holt* is limited to testimony by the defendant, repeating what had been told him of recent acts of violence by deceased directed against third parties. In the case at bar, defendant's witness Parker was examined about incidents of violence committed by deceased, as observed by Parker, not as told to defendant. The *Holt* rule does not embrace testimony by witnesses other than defendant and we think the rule should be strictly confined within the scope of that decision. The state of mind, the fears, and apprehensions of defendant are reflected by what he has been told, not by what other persons have seen the deceased do. If the State offers evidence to disprove defendant's claim that he received such information, defendant should be allowed to offer in rebuttal the witness or witnesses who furnished him with information about deceased's violent acts. Such rebuttal testimony should be limited to what was told defendant, as distinguished from the witnesses' independent recollection of what actually happened.

The *Holt* rule is vulnerable to valid criticism, principally that it introduces collateral issues that may lead to a trial or trials within a trial; it permits a double standard favorable to defendant, since the State cannot introduce evidence of defendant's past acts of violence or convictions for violent crimes;[2] and testing the credibility of such testimony is difficult. Bearing in mind that the essence of the justification of self-defense, and also of the rule of evidence under discussion, is how the situation appeared to defendant at the time of the

2. See dissenting opinion in *McMorris v. State,* 58 Wis.2d 144, 205 N.W.2d 559 (1973).

homicide,[3] we think it is reasonable and logical to limit this character of hearsay evidence to defendant's own recollection of the information that had been communicated to him of deceased's violent acts.

The witness Parker's testimony about violent acts committed by deceased against Parker and his wife was elicited out of the presence of the jury, followed by a lengthy colloquy between counsel and the trial judge. While it is clear that defense counsel was asserting that Parker had told defendant about the violent acts committed by deceased, after the adverse ruling of the trial judge with respect to Parker's testimony, he did not seek to adduce defendant's testimony for the record on appeal. Without defendant's version of what Parker may have told him, in the record for our review, the benefit of the *Holt* rule is not available to defendant. However, if defendant had testified that Parker related the identical version of the deceased's violent acts, as stated by Parker in this record, and the trial judge had ruled it incompetent, we would hold that to be harmless error beyond a reasonable doubt. In our view the proof is overwhelming that deceased was unarmed at the time defendant shot him and the circumstances of the encounter were such that defendant's claim that he acted in the belief that he was in imminent danger of death or great bodily harm has but slight, if any, probative value.

The result is that we affirm the conviction of defendant and adhere to the *Holt* rule, as interpreted herein. A defendant who has laid a proper foundation by pleading and evidence presenting the issue of self-defense may testify as to what he has been told of recent violent acts committed by deceased against others. Such evidence cannot be adduced from witnesses other than defendant, as proof in chief, but may be offered as rebuttal, if the State presents evidence to disprove that defendant had received such information.

HENRY, C. J., COOPER and HARBISON, JJ., and QUICK, Special Justice, concur.

**3.** See *Morrison v. State*, 212 Tenn. 633, 638, 371 S.W.2d 441, 443 (1963).