IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

NOVEMBER 1998 SESSION

FILED

February 16, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 03C01-9806-CR-00211 |
| Appellee, | ) | |
| | ) | Knox County |
| v. | ) | |
| | ) | Honorable Ray L. Jenkins, Judge |
| PAUL ANTHONY DEJONGH, | ) | |
| | ) | (First Degree Murder) |
| Appellant. | ) | |

FOR THE APPELLANT:

Susan E. Shipley
602 South Gay Street
Suite 501
Knoxville, TN 37902

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN 37243-0493

Todd R. Kelley
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN 37243-0493

Randall E. Nichols
District Attorney General
400 Main Street
P. O. Box 1468
Knoxville, TN 37901-1468

William H. Crabtree
Assistant District Attorney General
400 Main Street
P. O. Box 1468
Knoxville, TN 37901-1468

Sally Jo Helm
Assistant District Attorney General
400 Main Street
P. O. Box 1468
Knoxville, TN 37901-1468

OPINION FILED: _____

REVERSED AND REMANDED FOR A NEW TRIAL

L. T. LAFFERTY, SENIOR JUDGE

# O P I N I O N

The appellant, Paul Anthony Dejongh, referred herein as "the defendant," appeals as a matter of right from his conviction by a Knox County jury of murder first degree. The trial court imposed a sentence of life imprisonment. The defendant presents the following issues for appellate review:

1.  Whether there was sufficient evidence as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of premeditated murder first degree.

2.  Whether the trial court erred in allowing the prosecution to cover glossy, color photographs of obscene, vulgar graffiti with translucent masking tape in the presence of the jury.

3.  Whether the trial court erred in granting the state's oral motion in limine to preclude cross-examination of the state's witnesses of the issues of the decedent's possession of a gun, as well as his violent and threatening conduct.

4.  Whether the trial court erred in precluding the defense from cross-examining prosecution witnesses on the context and substance of admissions allegedly made by the defendant.

5.  Whether the trial court erred in preventing the defendant from offering a proffer of a witness to perfect the appellate record.

6.  Whether the trial court erred in failing to instruct the jurors on the lesser included offenses of murder first degree.

After a thorough review of the entire record, briefs of the parties, and applicable law, we reverse the trial court's judgment and remand for a new trial.

## FACTUAL BACKGROUND

On January 22, 1996, Deputy Drew Martin, patrol officer with the Knox County Sheriff's Department, responded to a complaint at the Red Roof Inn in Knox County. Deputy Martin talked to Holly (Martin) Dailey and Floyd Anderson Petgrave. After their conversation, Petgrave gave Deputy Martin some keys to apartment K7 in the Walker Springs Apartments. Deputy Martin went to the apartment where he found blood around

2

the door handle and blood droplets on the ground. After obtaining gloves, Deputy Martin opened the door and observed a pool of blood in the foyer. Upon entry into the apartment, Deputy Martin found the victim, Michael Evans, lying face down in some multi-colored balls that were strewn about in one of the rooms. Evans had no pulse. Deputy Martin and the other officers secured the apartment.

Holly (Martin) Dailey testified that she, the defendant, Anna Warren, "Pink" Floyd Anderson Petgrave, and the victim shared the apartment in the Walker Springs Complex. On January 21, 1996, Mrs. Dailey left work at approximately 3:00 a.m. and arrived home. After going to bed, Mrs. Dailey was awakened by "popping noises." She then heard Ms. Warren screaming in the hallway and saw the defendant standing behind Ms. Warren. Michael Evans was lying in the doorway. Mrs. Dailey, the defendant, Ms. Warren, and Petgrave grabbed their clothes and proceeded to leave. Before leaving, the defendant picked Evans up from the doorway and moved him into the "ball room."[1] Mrs. Dailey observed blood all over the floor. All four left and drove to a winery in Loudon. During the ride, the defendant talked to himself and said he had shot the victim. Later that day, Mrs. Dailey and Petgrave obtained a room at the Red Roof Inn. After a discussion with her father, Mrs. Dailey called 911. The Knox County sheriff deputies took her and Petgrave back to the Walker Springs Apartments. Mrs. Dailey did not see the defendant with a gun, nor was she aware of any plan or plot to kill Michael Evans.

Officer Miles Bradford Park, crime scene technician for the Knox County Sheriff's Department, testified that, upon his arrival at the Walker Springs Apartments, he began photographing the entrance and interior of the apartment. Officer Park took pictures of the different locations of blood and of a bullet found in the "ball room" where the victim was lying. The majority of the blood was in the foyer of the apartment. Officer Park observed a bullet hole in the apartment's front door and identified the hole as an exit hole. Officer Park identified two photographs of blood stains found on a wall in the living room adjacent

---

[1]The "ball room" appeared to be a bedroom in the apartment that had been converted into a play or game room. The floor of the bedroom was covered with hundreds of round, multi-colored balls similar to those found in children's playgrounds in fast food restaurants.

to some graffiti. During his examination of the victim, Officer Park found a live 16-gauge shotgun shell in the pocket of the victim's leather coat, but did not find a shotgun.

Richie Lee Gibby, a resident of Palmetto, Georgia, testified he met the defendant in Georgia at a music store. They became friends and eventually Gibby found the defendant a construction job. The defendant told Gibby he lived in Knoxville at one time in an apartment with a room full of balls. The defendant told Gibby he shot "Mikey" a couple of times.

Thomas L. Barnhart testified he met the defendant, known to him as Patrick Tate, through his friend, Richie Gibby. They became friends, and the defendant worked for Barnhart's father building houses. The defendant once told Barnhart he lived in Knoxville in an apartment with a lot of balls. The defendant also told Barnhart that he shot "Mikey" two or three times in the head.

Dr. Sandra K. Elkins, Knox County Medical Examiner, testified she performed an autopsy on the victim and determined the cause of the victim's death as two gunshot wounds to the head. Dr. Elkins found the gunshot wounds on the left side of the victim's face. Dr. Elkins testified the first wound, a nonfatal wound, entered the lower part of the victim's left ear lobe and traveled to the right side, fracturing the victim's jaw. She described this gunshot wound as a contact wound, in that, at the time of the firing, the gun was actually pressed against the victim's skin or was less than an inch away. Dr. Elkins could not say whether the shooter was coming at the victim, or the victim was coming at the shooter. Dr. Elkins recovered a bullet from this wound and gave it to the Knox County Sheriff's Department.

As to the second gunshot wound, Dr. Elkins testified this bullet entered the left side of the victim's face, traveled to the skull and passed through the brain. She described this wound as a near gunshot wound, in that the gun's muzzle was six to twelve inches from the victim's head when fired. After this shot, the victim was immobile and unconscious.

4

After attempting to call a witness and the state objecting, the defendant elected not to provide any proof.

## LEGAL ANALYSIS

Since we are reversing and remanding this cause for a new trial, it will only be necessary to address two specific appellate issues: (3) whether the trial court properly precluded the defendant from introducing evidence of the victim's prior violent conduct, and (4) whether the trial court erred in prohibiting the defendant from cross-examining prosecution witnesses on the context and substance of admissions made by the defendant.

## ISSUE 3

The defendant contends the trial court erred in limiting the cross-examination of state witnesses on the issues of the victim's possession of a firearm, as well as the victim's violent and threatening conduct in the defendant's presence. The state disagrees.

The record establishes that the defendant intended to cross-examine the first state witness, Holly (Martin) Dailey, about the victim's prior acts of violence and possession of a firearm. The trial court granted the state's motion in limine to reject this testimony on the ground that the defendant would have to first raise the issue of self-defense or the first aggressor theory issue. The trial court denied the defendant a proffer of proof, but permitted the proffer at the conclusion of the state's proof in chief. First, we note the better practice would have been for the trial court to listen to the proffer of proof at the outset, rather than at the conclusion of the case. Proffers of proof, when appropriate, are preferred, and the trial court must allow them. *Alley v. State,* 882 S.W.2d 810, 817 (Tenn. Crim. App. 1994); Neil P. Cohen, et al., *Tennessee Law of Evidence* § 103.4 at 20 (3d ed. 1995).

At the proffer of proof, Holly (Martin) Dailey testified that the victim was a very violent and aggressive person. The victim always carried a gun in his pocket and showed it every day. Mrs. Dailey described an incident when she, the defendant, the victim, and Ms. Warren were in a car. The victim and Ms. Warren began arguing, and the victim pulled out a gun and told her to "shut the hell up" or he would kill her.

Rule 404(a)(2), Tennessee Rules of Evidence, permits a defendant to offer proof of the victim's character for violent behavior to help establish the victim was the aggressor. Rule 405(a) permits such proof by reputation or opinion evidence and only on cross-examination under certain circumstances:

> (1) The court upon request must hold a hearing outside the jury's presence,
>
> (2) The court must determine that a reasonable factual basis exists for the inquiry, and
>
> (3) The court must determine that the probative value of a specific instance of conduct on the character witness's credibility outweighs its prejudicial effect on substantive issues.

Rule 405(b) regarding specific instances of conduct states: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or **defense**, proof may also be made of specific instances of that person's conduct." (emphasis added).

The principles governing the admissibility of specific violent acts of the victim against third persons are somewhat more stringent than those governing the admissibility of opinion or reputation evidence. If the defendant was aware of the victim's violent conduct against individuals at the time of the offense, such proof is admissible as substantive evidence of the defendant's state of mind. *State v. Ruane,* 912 S.W.2d 766, 779 (Tenn. Crim. App. 1995) (citing *State v. Hill,* 885 S.W.2d 357, 361 (Tenn. Crim. App. 1994)). Because such evidence is offered to establish the defendant's state of mind with respect to the victim, the defendant's knowledge of the specific violent acts of the victim against others is required. *See Williams v. State,* 565 S.W.2d 503, 505 (Tenn. 1978). Since the defendant was present when the victim allegedly threatened a third party and the victim

6

was known to carry a firearm, the trial court was in error for limiting the cross-examination of the witness, Holly (Martin) Dailey. *State v. John D. Joslin,* No. 03C01-9510-CR-00299 (Tenn. Crim. App., Knoxville, September 18, 1997). The defendant would be entitled to cross-examine, even the first state witness, to establish a self-defense theory. Accordingly, we conclude that the trial court's error requires a remand for a new trial.

## ISSUE 4

The defendant contends that the trial court erred in precluding the defendant from cross-examining state witnesses on the context and substance of admissions made by the defendant. The state concedes the trial court should have allowed such cross-examination, but argues that the error was harmless beyond a reasonable doubt.

We agree with the state that the trial court erred in restricting the defendant as to the cross-examination of prosecution witnesses, but disagree that it was harmless error beyond a reasonable doubt. Generally, a defendant is prohibited from introducing self-serving statements without testifying:

> A declaration made by a defendant in his own favor, unless part of the res gestae or of a confession offered by the prosecution, is not admissible for the defense. A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness. If such evidence were admissible, the door would be thrown open to obvious abuse: an accused could create evidence for himself by making statements in his favor for subsequent use at his trial to show his innocence.

2 Charles E. Torcia, *Wharton's Criminal Evidence* § 294 at 284-86 (14th ed. 1986); *Hall v. State,* 552 S.W.2d 417, 418 (Tenn. Crim. App.), *cert. denied* (Tenn. 1977).

At the conclusion of the direct testimony of state witnesses, Richie Gibby and Thomas L. Barnhart, the defendant attempted to elicit from their testimony certain statements made by the defendant surrounding the necessity to shoot the victim. The trial court sustained the state's objection and denied the defendant an opportunity to present

7

a proffer of proof as to the relevancy of such statements. It was the defendant's theory that he shot the victim in self-defense. At the conclusion of the state's proof in chief, the defendant attempted to call Holly (Martin) Dailey to testify concerning certain acts of violence committed by the victim in her and the defendant's presence, including carrying a gun. The trial court sustained the state's objection on the ground that the issue of self-defense had not been fairly raised. The defendant felt compelled to rest his case and make a proffer of proof on the relevancy of this testimony. The trial court permitted the defendant to present the proffer of proof.

In the proffer of proof, the witness, Richie Gibby, related the defendant's version of the shooting. In summary, when the defendant and Anna Warren returned to their apartment, they heard what they thought were gunshots coming from their apartment. The defendant found several strangers in the apartment, who were acquaintances of the victim, and asked them to leave. The strangers left, and the victim and the defendant began arguing. The defendant told Ms. Warren to take his gun to the back, because he did not want it around for any reason. However, the defendant and the victim continued a heated argument. The victim refused to leave the apartment and told the defendant, "You ain't got the balls to kick me out or to shoot me." At that time, the victim jumped back quickly and went into his pocket "to draw." The defendant informed the witness he was afraid for his life and had to defend himself. In cross-examination, the witness disagreed with many statements he had made to law enforcement officers in Atlanta concerning the defendant's version of the shooting. Apparently, the witness had previously told law enforcement officers that the defendant may have pointed the gun at the victim during the argument.

Thomas L. Barnhart testified that the defendant told him he returned home one night to find the victim and the victim's friends in the apartment causing a disturbance. After telling the victim's friends to leave, the victim began arguing with the defendant and refused to leave. During the argument, the victim told the defendant that the defendant "didn't have the guts to shoot him; he didn't have it in him." The defendant told the witness that the victim quickly reached for his pocket, as if he were going to draw a gun. At that point in

8

time, the defendant shot the victim. Although the witness disagreed with some of his statements given to law enforcement officers, he did relate that the defendant told him the defendant shot the victim three times in the head, and that the victim usually carried a gun, but the defendant did not find one on the victim.

The trial court cited *State v. Turnmire,* 762 S.W.2d 893, 897 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1988), as controlling authority for denying the defendant's proffer of proof. In *Turnmire,* 762 S.W.2d at 897, the defense called a witness to relate the statements of the defendant as to how she killed her parents. This Court upheld the trial court's decision in finding these statements were self-serving and not admissible. We note the defendant in *Turnmire* did not claim self-defense. We believe the trial court misapplied the reasoning in *Turnmire* to the facts in this record.

In *State v. Robinson,* 622 S.W.2d 62, 71 (Tenn. Crim. App. 1981), this Court clearly stated the law on this subject:

> When a confession is admissible, the whole of what the accused said upon the subject at the time of making the confession is admissible and should be taken together; and if the prosecution failed to prove the whole statement, the accused is entitled to put in evidence all that was said to him and by him at the time which bears upon the subject of controversy including any **exculpatory or self-serving declarations** connected therewith. *It is for the jury to say what weight shall be given to the several parts of the statement, for they may well believe that part which charges the prisoner, and reject that which tends to exculpate him.*

*Id.* (citing *Espitia v. State,* 199 Tenn. 696, 288 S.W.2d 731 (1956)); *see State v. Caldwell,* 696 S.W.2d 541, 542 (Tenn. Crim. App. 1985); *State v. Calvin Lee Sneed,* No. 03C01-9611-CR-00444 (Tenn. Crim. App., Knoxville, June 12, 1998). When the state offers witnesses to testify concerning statements of the defendant, which imply an admission of guilt, the defendant is entitled through cross-examination to establish the defendant was acting in self-defense in homicide cases. We find the trial court was in error for not permitting cross-examination of the witnesses, Richie Gibby and Thomas L. Barnhart, to establish the viability of self-defense. It would be the function of the jury to determine if

such defense, under the facts in this record, was credible.

The state urges this Court to find such error was harmless, citing *State v. Howell,* 868 S.W.2d 238 (Tenn. 1993). In *Howell,* 868 S.W.2d at 253, our Supreme Court set forth the standards to determine when constitutionally improper restrictions on the right of cross-examination constitute harmless error:

> In determining whether the constitutionally improper denial of a defendant's opportunity to impeach a witness is harmless under the *Chapman* standard, the correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, the error was nonetheless harmless beyond a reasonable doubt. *Delaware v. VanArsdall,* 475 U.S. 673, 684-85, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). A number of factors are relevant to this inquiry including the importance of the witness' testimony in the prosecution's case, the cumulative nature of the testimony, the presence or absence of evidence corroborating or contradicting the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case.

In the instant case, the state introduced the defendant's statements of criminal involvement in the death of the victim in which he admitted shooting the victim. The only other admission on the part of the defendant was to Holly (Martin) Dailey during the ride to the winery, but the defendant did not divulge any of the details of the shooting. There were no factual witnesses presented by the state to shed further light on the exact circumstances surrounding the death of the victim.[2] Thus, the testimony of Richie Gibby and Thomas Barnhart becomes crucial to establish some explanation as to why the defendant believed it necessary to kill the victim. We disagree with the state that the testimony of these two witnesses was of no great importance. We find the trial court was in error for restricting the cross-examination of the state witnesses, Richie Gibby and Thomas Barnhart, and remand for a new trial.

As to issues 1 and 2, we elect not to address in lieu of a remand for a new trial. As

---

[2]There is an inference in the record that Anna Warren may have been present at the time of the shooting. This is based on the testimony of Holly Dailey, wherein she stated she was awakened by Ms. Warren, and the proffered testimony of Richie Gibby and Thomas Barnhart. Ms. Warren was not called by either party in this cause.

to the defendant's claim of the trial court's failure to charge the lesser included offense of voluntary manslaughter, the trial court may wish to readdress this request based upon the testimony in the new trial.

This cause is reversed and remanded for a new trial.

_____
L. T. LAFFERTY, SENIOR JUDGE

CONCUR:


_____
DAVID H. WELLES, JUDGE


_____
JAMES CURWOOD WITT, JR., JUDGE