# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## NOVEMBER 1998 SESSION



FILED

February 25, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9803-CR-00110 |
| | ) | |
| vs. | ) | Knox County |
| | ) | |
| WILLIAM BRIAN BELSER, | ) | Honorable Ray L. Jenkins, Judge |
| | ) | |
| Appellant. | ) | (Second Degree Murder) |
| | ) | |

**FOR THE APPELLANT:**

TOM SLAUGHTER
Attorney At Law
602 S. Gay Street, Suite 600
Knoxville, TN 37902

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General & Reporter

R. STEPHEN JOBE
Assistant Attorney General
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

RANDALL E. NICHOLS
District Attorney General
City-County Building
Knoxville, TN 37902

ROBERT JOLLEY
Asst. Dist. Attorney General
City-County Building
Knoxville, TN 37902

OPINION FILED: _____

**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

**OPINION**

The defendant, William Brian Belser, was convicted by a Knox County Criminal Court jury of the second-degree murder of Brian Shaver, and the trial court sentenced the defendant as a Range I offender to serve 25 years in the Department of Correction. The sentence runs consecutively to a federal sentence the defendant was serving at the time of his Knox County conviction. In this direct appeal, the defendant raises the following issues:

1. Failure of the trial court to grant a continuance when the defendant was belatedly transported to Knox County from federal custody in Atlanta;

2. The insufficiency of the evidence to support a second-degree murder conviction;

3. Failure of the trial court to allow defense counsel to cross-examine a state witness about the victim's violent disposition; and

4. Imposing the sentence to run consecutively to the federal sentence the defendant was serving at the time of trial.

After a review of the record, the briefs, and the applicable law, we affirm the judgment of the trial court.

The conviction from which the defendant now appeals is the defendant's second conviction for the homicide of Brian Shaver. This court overturned the first conviction of second-degree murder because the trial court failed to instruct the jury as to the lesser included offense of voluntary manslaughter. State v. Belser, 945 S.W.2d 776 (Tenn. Crim. App. 1996). The present conviction resulted from the retrial upon remand from this court.

On March 29, 1993, the victim Brian Shaver and four other young adults lived in a Knox County townhouse. Angie Barbeau, who was working at the

time as a "stripper," was one of these residents and had been the victim's girlfriend. On the evening of March 29 the victim spoke by telephone from the townhouse with Ms. Barbeau and with members of her family. According to persons who were present in the townhouse that evening, the victim became upset and angry because he thought Ms. Barbeau's family had been abusive to him over the telephone and because he believed that the defendant had bought a car for Angie Barbeau. During their telephone conversation, the victim and Ms. Barbeau agreed that he would place some of her belongings on the front porch for her to pick up. The victim was agitated and repeatedly declared that he would not allow Ms. Barbeau to come back into the townhouse.

The victim gathered a large pile of Ms. Barbeau's clothing and other personalty and stacked it on the front porch. However, as he became more distraught, he returned to the porch and kicked and threw her things and scattered them across the lawn. Later, Ms. Barbeau arrived at the front door. The victim met her at the door and placed his hand on her chest and pushed her away so he could close the door. As a result of this push, Ms. Barbeau may have stumbled or fallen down. The victim moved back upstairs and continued to express displeasure with Ms. Barbeau. Within moments, the victim returned to the same door to answer either the door bell or a knock.

Robert John Bowlby testified that when the victim opened the door this second time, Bowlby saw a red beam shining into the room. He heard someone shout, "He's got a gun!" Bowlby saw the victim push, or "walk," Ms. Barbeau back into the defendant, who was standing three or four feet behind her. Bowlby noticed that the red beam was coming from a gun which the defendant held at shoulder level. The unarmed victim, who was then outside, closed the door behind him. Bowlby heard two male voices shouting, a scream and then a gunshot. The victim then walked back into the townhouse holding his chest and bleeding. Bowlby called an ambulance.

3

Bowlby also testified that, before March 29, he saw the defendant in West Knoxville when the defendant had the same pistol that he had at the townhouse on March 29. The defendant said that he was "going to use it for any m----- f------ that f---- with me, and that includes that Shaver guy."

Bill Ferrell testified that he was at the townhouse on March 29. When the victim answered the door the second time, Ferrell saw the defendant standing outside behind Ms. Barbeau. He testified that the victim told both Belser and Barbeau to leave. When Ms. Barbeau tried to come past him into the house, the victim "scooped her up, caught her on his left side, pushed her back. She hit Belser's right arm." Ferrell testified that she moved away and the defendant pulled a 9mm pistol from his trenchcoat pocket. Ferrell saw the flash of the light beam and yelled that the defendant had a gun. Ferrell tried to pull the victim back inside but was unable to do so because he was "too busy running." He heard the gunshot and the victim say to the defendant, "You shot me. Now you're going to jail." Ferrell then looked out the window and saw the defendant trying to pull Ms. Barbeau to a car.

Jeffrey Chandler Jackson and Kevin Hall were also present in the townhouse on March 29. Jackson testified that after he heard the shouting and the gunshot ten seconds later, he looked out the front door and saw the defendant standing in the yard and swinging a gun down to his right side.

Lisa Michelle Hubbard and Guy Adams testified that they were at Hubbard's residence at about 10:30 or 11:00 on the night of March 29, 1993 when the defendant and Ms. Barbeau arrived. The defendant laid a pistol on Hubbard's table and said no one should touch it because he thought he had "shot Shaver." Hubbard testified that the defendant said that Shaver had pulled Angie Barbeau out of the car and had hit her, although Hubbard saw no evidence of an assault on Barbeau's person. Hubbard further testified that the defendant said that he shot the

4

victim as the victim was hitting him. However, Adams testified that the defendant said that he had lowered the sight beam from the victim's head to his chest when the gun went off. At the defendant's request, Adams took the pistol to a location on Clinton Highway where he left it. Adams identified the pistol in evidence as the same pistol which the defendant brought to Hubbard's residence.

Through other proof, the state established that the pistol was recovered from the Clinton Highway location, that the cartridge found in the townhouse lawn had the same "mechanical fingerprints" as the cartridges test-fired through the pistol by the Tennessee Bureau of Investigation, that the gunshot residue test performed on the defendant indicated he had "fired, handled, or was near a gun when it was fired," and that the victim bled to death as a result of the gunshot wound.

The jury convicted the defendant of second-degree murder, and the trial court imposed the maximum Range I sentence of 25 years to run consecutively to the federal sentence the defendant was serving at the time.

Before proceeding to discuss the issues on appeal, we acknowledge that the notice of appeal in this case was filed one day late; however, in the interest of justice we excuse the untimely filing. See Tenn. R. App. P. 4(a).

First, we examine the defendant's complaint that the trial court erred in failing to grant a continuance of the trial. Defense counsel was appointed in this case on May 14, 1997 after the court had successively excused two previously-appointed attorneys. Although trial had already been set for November 17, 1997, at some point and through some means not reflected in the record the trial date was accelerated to September 30, 1997. Counsel filed motions to continue on September 23 and 28; however, only the grounds alleged in the latter motion have been preserved as an issue on appeal. In that motion, defense counsel asserted (1)

5

the defendant was in federal custody in Atlanta pursuant to 1996 federal convictions, (2) counsel wished him to be brought to Knoxville at least two weeks prior to trial, (3) as of September 28 he had not arrived, and (4) the federal authorities were not being cooperative in arranging his transit to Knoxville. On September 29, the trial court continued the trial from September 30 until October 1 and continued the hearing on the motion until the next day, September 30. The defendant arrived in Knoxville at about 9:00 pm on Monday, September 29. At the hearing on Tuesday morning, the trial court decided to begin the trial on Wednesday, October 1, at 1:30 pm and announced that it believed that the day and a half would be sufficient time for counsel to consult with the defendant.

On appeal, the defendant argues that the allotted time was insufficient; however, during the arguments on the continuance in the trial court, defense counsel acknowledged that normal preparation requirements were alleviated because of the earlier trial of the case, that counsel had made one trip to Atlanta to meet with the defendant, that counsel would "need at least a day with [the defendant]," and that "if we can get him here today [Monday, September 29] and I can have tomorrow [Tuesday] with him, perhaps Wednesday I could go."

"The question of whether a criminal trial should be continued to a later date is entrusted to the sound discretion of the trial court." State v. Covington, 845 S.W.2d 784, 787 (Tenn. Crim. App. 1992). On appeal, this court will not "interfere with the exercise of this discretion unless it appears on the face of the record that (a) the trial court has abused its discretion and (b) prejudice enured to the accused as a direct result of the trial court's ruling." Id. We agree with the state that the defendant has shown neither an abuse of discretion nor prejudice in this instance.

Although defense counsel originally alleged in a separate motion for continuance that he had not had sufficient time to interview or plan for the use of witnesses and that an expert in firearm forensics with which the defense had

6

consulted was unavailable for the trial date, the grounds of that motion were abandoned. Moreover, the defendant has not articulated any specific instance of lack of preparation as a result of the defendant's belated arrival in Knoxville, the ground for continuance which is asserted on appeal. There is cause to believe the federal authorities were capricious in their handling of the Tennessee requests to have their prisoner made available for his state homicide trial. Although a Tennessee trial court in this situation should not hold any such federal caprices against the accused on the question of a continuance, there is no showing of an abuse of discretion. The trial court partially granted the motion, continuing the trial a day and a half, a period of time which defense counsel said would be the minimum he would need. Counsel had served on the case since May 1997, had previously met with the defendant at his place of confinement in Atlanta, and had the benefit of the record of the previous trial in the case. We find no suggestion of prejudice to the defendant because a longer continuance was not granted. Although the defendant neither testified nor called any witnesses in his behalf, he has made no attempt to show that his lack of evidence in chief resulted from insufficient preparation time rather than defense strategy. Accordingly, we hold that the trial court did not abuse its discretion in refusing to grant the continuance motion in full.

The next issue is the defendant's claim that the evidence presented at trial is insufficient to support the verdict of second-degree murder. It is well established that a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978); State v. Townsend, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978).

Moreover, a verdict against the defendant removes the presumption

7

of innocence and raises a presumption of guilt on appeal. <u>State v. Grace</u>, 493 S.W. 2d 474, 476 (Tenn. 1973); <u>Anglin v. State</u>, 553 S.W.2d 616, 620 (Tenn. Crim. App. 1977). The defendant has the burden of overcoming the presumption on appeal. <u>State v. Brown</u>, 551 S.W.2d 329, 331 (Tenn. 1977).

Most significantly, where the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 2782 (1979); Tenn R. App. P. 13; <u>see</u> <u>also</u> <u>State v. Williams</u>, 657 S.W.2d 405 (Tenn. 1983). This rule applies to findings based on both direct and circumstantial evidence. <u>State v. Thomas</u>, 755 S.W.2d 838, 842 (Tenn. Crim. App. 1988). Circumstantial evidence alone may be sufficient to convict one of a crime. <u>State v. Boling</u>, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992).

To establish a defendant's guilt of murder in the second degree, the state must prove that the accused knowingly killed another person. <u>See</u> Tenn. Code Ann. § 39-13-210 (a)(1) (1991). The proof in this case, as outlined above, overwhelmingly supports the jury's conclusion that the defendant knowingly killed Brian Shaver. Any issues of fact which the defendant may have raised and/or argued were resolved in the state's favor by the jury, and such was the jury's prerogative. <u>State v. Gilbert</u>, 612 S.W.2d 188 (Tenn. Crim. App. 1980). We hold that the evidence was sufficient beyond a reasonable doubt to convict the defendant of second-degree murder.

In his third issue, the defendant argues that the trial court erred when it did not allow the defendant to open his cross-examination of Mr. Bowlby, the state's first witness, by asking him whether the victim was an "aggressive type" of person. Upon the state's objection to the question, the court held a jury-out hearing. After hearing argument about the "first aggressor" rule and about the applicability

8

of the facts to the presence of provocation that might reduce the charge to voluntary manslaughter, the court ruled that any questions of this first witness about the victim's history of aggression or violence were premature. The defendant did not revisit the issue throughout the trial, did not attempt any other cross-examination of this type, and did not present any independent proof of the victim's history of aggression or violence.

Under Tennessee law, evidence of a homicide victim's violent acts against the defendant and others may be admissible under certain circumstances even if they occurred prior to the events that led to the murder. See State v. Ruane, 912 S.W.2d 766, 780-781 (Tenn. Crim. App. 1995); State v. Hill, 885 S.W.2d 357, 361 (Tenn. Crim. App. 1994); State v. Furlough, 797 S.W.2d 631 (Tenn. Crim. App. 1990); State v. Laterral Jolly, No. 02C01-9207-CR-00169 (Tenn. Crim. App., Jackson, Dec. 15, 1993), perm. app. denied (Tenn. 1994). The rules of admissibility vary with the purpose for which the evidence is admitted.[1]

We need not elaborate upon the interplay between Tennessee Rules of Evidence 405 and the rules for the admissibility of "first aggressor" evidence developed by Tennessee case law. The prerequisite for the admission of evidence of a deceased's violent acts in every instance is the same. Before first aggressor evidence may be admitted, the issue of whether the deceased was the first aggressor must be raised by the proof. State v. Ruane, 912 S.W.2d at 766. Allegations of counsel and pleadings are not sufficient to raise the issue of self-defense. State v. Laterral Jolly, slip op. at 7. Here, defense counsel's first question of the state's first witness was whether the victim was an "aggressive type" of person. Bowlby's testimony on direct examination contained no suggestion that the defendant may have acted in self defense or that the deceased was the "first

---

[1] At times, the evidence may be admitted to demonstrate either the defendant's or the victim's state of mind, to impeach or rebut the state's evidence that the deceased had a peaceful character, or so that the jury can determine who was the true aggressor. State v. Furlough, 797 S.W.2d 631, 648-49 (Tenn. Crim. App. 1990) (citations to other cases omitted).

aggressor."  The trial court properly found that this line of questioning was premature.  The trial court did not rule that first aggressor evidence, if otherwise proper, would not be allowed later in the trial after the pertinent issues had been raised by the proof.  The issue of self-defense was not raised by Bowlby's testimony, and the defendant made no effort to offer the evidence again.  There is no error in the trial court's handling of the first aggressor issue.

The defendant's argument about his attempt to cross-examine Bowlby was based in part upon his claim that the victim's status as an "aggressive type" person provoked a mental reaction in the defendant that could reduce his culpability for the killing to that of voluntary manslaughter.  However, the use of evidence of the victim's prior violent misconduct to establish this defense requires that the defendant knew, at the time of the killing, that the victim had the violent tendencies.  Furlough, 797 S.W.2d at 648.  The evidence, offered for this purpose, relates to "apprehension on the part of the defendant" and must be introduced through the defendant in his proof in chief, unless it is needed "in rebuttal if the state 'presents evidence to disprove defendant had received such information.'" Id. (citing Williams v. State, 565 S.W.2d 503, 505 (Tenn. 1978)).  In the present case, the question posed to Bowlby was premature for the purpose of showing the defendant's apprehension. Moreover, the defendant never testified and never injected into the trial any basis for the court to conclude that he knew of any violent acts of the victim.  Thus, to the extent that the defendant sought the evidence in order to show a reduced culpability, the claim is meritless.

Finally, we address the the defendant's sentencng issue.  He correctly observes in his brief that a maximum Range I sentence of 25 years was approved by this court in the previous appeal from the first second-degree murder conviction, see Belser, 945 S.W.2d at 791-92, and the defendant restricts his sentencing complaint to the impostion of his sentence to run consecutively to the existing federal sentence.

10

We cannot review even this issue, however, because the defendant has not included in the appellate record any transcript of sentencing proceedings. The record contains no presentence report, no transcript of a sentencing hearing, and no findings and conclusions of the trial court. See Tenn. Code Ann. §§ 40-35-203, 205, 209 (1997). It is the duty of the appellant to prepare a record which conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); State v. Rhoden, 739 S.W.2d 6 (Tenn. Crim. App. 1987); State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). Generally, this court is precluded from addressing an issue on appeal when the record fails to include relevant documents. See, e.g., State v. Bennett, 798 S.W.2d 783 (Tenn. Crim. App. 1990); Tenn. R. App. P. 24.

Although we are precluded from reviewing the consecutive sentencing issue raised by the defendant in his brief, we note that Tennessee Rule of Criminal Procedure 32(c)(2) provides that, when the trial court is sentencing a defendant who has "additional sentences or portions thereof to serve, as the result of conviction in other states or in *federal* court, the sentence imposed *shall be consecutive* thereto unless the court shall determine . . . that good cause exists to run the sentences concurrently and explicitly so orders." Tenn. R. Crim. P. 32(c)(2) (emphasis added). The trial court's judgment did just the opposite from explicitly ordering concurrent service; it explicity ordered consecutive sentences. Accordingly, Rule 32(c)(2) appears to preclude any claim to concurrent sentencing which the defendant could have made had he presented an adequate record.

The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

11

CONCUR:

_____
DAVID H. WELLES, JUDGE


_____
L.T. LAFFERTY, SPECIAL JUDGE