# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### SEPTEMBER 1998 SESSION

**FILED**

**January 6, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | **C.C.A. NO. 03C01-9707-CR-00261** |
| Appellee, | ) | |
| | ) | **KNOX COUNTY** |
| VS. | ) | |
| | ) | **HON. RICHARD BAUMGARTNER,** |
| JOANNA GAIL ROSA, | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (First-Degree Murder) |

FOR THE APPELLANT:            FOR THE APPELLEE:

**M. JEFFREY WHITT**            **JOHN KNOX WALKUP**
706 Walnut St., Suite 902    Attorney General & Reporter
Knoxville, TN 37902

                                    **ELIZABETH B. MARNEY**
                                    Asst. Attorney General
                                    John Sevier Bldg.
                                    425 Fifth Ave., North
                                    Nashville, TN  37243-0493

                                    **RANDALL E. NICHOLS**
                                    District Attorney General

                                    **GREGORY H. HARRISON**
                                       -and-
                                    **S. JO HELM**
                                    Asst. District Attorneys General
                                    P.O. Box 1468
                                    Knoxville, TN 37901-1468

OPINION FILED:_____

**AFFIRMED**

**JOHN H. PEAY,**
Judge

# O P I N I O N

A jury found the defendant guilty of the first-degree premeditated murder of James Dalton and sentenced her to life imprisonment. The defendant now appeals, presenting the following issues for review:

> I. Whether the evidence was sufficient to prove premeditation and deliberation;
>
> II. Whether the trial court should have suppressed the defendant's confession on the theory it was involuntarily given;
>
> III. Whether the trial court committed reversible error by not allowing the defendant to call her co-defendant to the witness stand, when the co-defendant would have merely invoked his Fifth Amendment privilege against self-incrimination; and
>
> IV. Whether the trial court properly charged the jury with range of punishment, when the State failed to request such an instruction until after the conclusion of the proof.

Finding no merit to the defendant's arguments, we affirm.

On March 25, 1995, the defendant; her co-defendant, Dennis Halcomb; the murder victim, James Dalton; and two friends, Teresa Dake and Larry Davis, rented two adjoining motel rooms in Athens, Tennessee, and spent the evening "partying." The next day, the group decided to spend another evening at the motel. That evening, while Dalton and Davis remained at the motel, the defendant, co-defendant Halcomb, and Dake robbed the gas station where Dake worked.

Early the next morning, on March 27, 1995, the group left Athens and drove to Knoxville, stopping at another motel, where they again rented adjoining rooms. The defendant, co-defendant Halcomb, and Dake expressed concern that Dalton would report the robbery to authorities. The defendant said they were going to have to "do something" to keep him from "saying anything." Later, while Davis and Dake slept in one of the motel

2

rooms and Dalton slept in the other, the defendant and co-defendant Halcomb discussed what to do about Dalton. They planned to take Dalton's wallet and car, and Halcomb said he was going to knock Dalton out. The defendant took Dalton's keys and wallet and put them in the room where Dake and Davis were sleeping.

When the defendant returned, Dalton confronted co-defendant Halcomb about his missing keys and wallet. Halcomb, who was approximately 6'3" and weighed over 200 pounds, began hitting Dalton, who was approximately 5'4" and 145 pounds. Halcomb held Dalton's neck in a choke-hold and asked the defendant to help him. While Dalton was on his knees leaning over the bed, the defendant grabbed the front of Dalton's throat and choked him, even while Dalton gasped for air and begged her to stop. Halcomb removed Dalton's belt from his pants, placed it around Dalton's neck, and told the defendant to hold the belt. While Halcomb went to the restroom, the defendant choked Dalton with the belt until his face turned blue. When Halcomb returned, the defendant checked Dalton for a pulse, but did not find one.

They drove Dalton's body to an area of town with which the defendant was familiar. After the defendant sliced Dalton's throat with a box cutter to ensure he was dead, they dumped his body on the side of the road, covering it with leaves. They returned to the motel, picked up Dake, and traveled in Dalton's car to Illinois to visit the defendant's family and then to Daytona Beach, Florida.

Meanwhile, Dalton was reported missing. On April 3, 1995, Sherry Wade, a friend of Dake and the defendant, received a call from the defendant. Knowing Dalton was missing and thinking he might be with them, Wade asked the defendant where Dalton was. At first, the defendant replied she did not know, but then she told Wade "he was gone; he's gone; he's under a tree." A couple of days later, Wade reported this

3

conversation to the McMinn County Sheriff's Department.

On April 6, 1995, the defendant, her co-defendant, and Dake were apprehended in a traffic stop while driving Dalton's vehicle in Florida. During an interview by the Florida authorities, the defendant initially denied knowing anything about Dalton's disappearance, but she later drew a map showing where his body was buried. Using the map, Tennessee authorities found the body. The defendant was arrested and waived extradition to Tennessee where she was indicted. Following her jury trial, which was severed from co-defendant Halcomb's trial, the defendant was found guilty of first-degree murder and sentenced to life imprisonment.

The defendant first argues that the evidence was insufficient to prove that she killed Dalton after premeditation and deliberation. See T.C.A. § 39-13-202(a)(1)(Supp. 1994)(defining first-degree murder as the "intentional, premeditated and deliberate killing of another" person). Premeditation requires proof that the defendant had a previously formed design or intent to kill and acted after exercising reflection or judgment. T.C.A. § 39-13-201(b)(2) (1991); State v. Brown, 836 S.W.2d 530 (Tenn. 1992); State v. West, 844 S.W.2d 144 (Tenn. 1992). Deliberation requires a showing of a "cool purpose," that is, that the defendant had some time to reflect and that his or her mind was free of impulse and passion prior to the killing. T.C.A. § 39-13-201(b)(1)(1991); Brown, 836 S.W.2d at 540. The elements of premeditation and deliberation are jury questions that may be established by proof of the circumstances surrounding the killing. Id. at 539. Several factors support the existence of these elements, including the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime; and calmness immediately after the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997).

4

Here, the evidence shows that prior to their attack on Dalton, the defendant, co-defendant Halcomb, and Dake discussed their concern that Dalton would report the robbery they had committed. The defendant said they were going to have to "do something" to keep him from "saying anything." Later, the defendant and co-defendant Halcomb discussed what to do about Dalton. According to the defendant's confession,[1] she and Halcomb planned to take Dalton's wallet and car. The defendant admitted helping Halcomb choke Dalton, first with her hand and then with Dalton's belt, even though he begged her to stop. After Halcomb left the room, the defendant continued to choke Dalton until his face turned blue. When asked what she was trying to accomplish by choking him, the defendant told authorities, "Kill him, I guess." These circumstances establish that the defendant acted after the exercise of reflection or judgment and with a previously formed intent to kill, which supports a finding of premeditation. See T.C.A. § 39-13-201(b)(2) (1991); Bland, 958 S.W.2d at 660.

The evidence also showed that immediately after the killing, the defendant helped choose an isolated area to dump Dalton's body and then covered the body with leaves to prevent detection. The defendant told authorities that she kept Dalton's wallet in order to prevent the body from being identified. She also admitted in her confession that she sliced Dalton's throat to ensure he was dead. Then, she, co-defendant Halcomb, and Dake fled to Illinois, where they visited the defendant's family as if nothing had happened. These circumstances indicate a calmness immediately following the killing, which supports a finding of deliberation. See Bland, 958 S.W.2d at 660; Brown, 836 S.W.2d at 540.

We recognize that at trial, the defendant contradicted her confession,

---

[1]Regardless of the defendant's argument that her statement should have been suppressed, the sufficiency of the convicting evidence must be examined in light of all evidence presented to the jury. See, e.g., State v. Longstreet, 619 S.W.2d 97 (Tenn. 1981); State v. Robert Lee "Flippo" Morris, No. 1195, Hamilton County (Tenn. Crim. App. filed November 20, 1991, at Knoxville).

testifying that she did not choke Dalton or intend to kill him; that she loosened the belt around his neck in order to allow him to breathe; that Halcomb, who was upset, choked Dalton until he died; and that she cut Dalton's throat solely to prevent his suffering. Factual discrepancies such as these are properly resolved by the jury, not by this Court. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Thus, regardless of the defendant's testimony, sufficient evidence remains in the record to support the jury's findings of premeditation and deliberation.

Next, the defendant argues that the trial court erred in failing to suppress statements she made to Tennessee authorities. She first argues that her statements should have been suppressed because she was denied her Sixth Amendment right to counsel by not being informed of her right to counsel or offered an attorney by a neutral magistrate within twenty-four hours of her arrest in Florida. She fails, however, to cite any authority on this point, thus waiving this issue for review. Rules of the Court of Criminal Appeals of Tennessee 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988). Even so, the defendant's argument lacks merit because at the suppression hearing, a Florida law enforcement agent testified that the defendant appeared before a judge on April 7, 1995, within twenty-four hours of her arrest, at which time she would have again been advised of her right to counsel. Although the defendant argues she did not appear before a judge until April 11, and then appeared only to waive extradition, the trial court was within its authority to accredit the testimony of the Florida law enforcement agent over the testimony of the defendant. Because the evidence supports the trial court's finding that the defendant was advised of her right to counsel by a neutral magistrate within twenty-four hours of her arrest, the defendant's contentions lack merit. See State v. Kelly, 603 S.W.2d 726, 728-29 (Tenn. 1980)(findings of a trial court will not be disturbed on review unless the evidence preponderates against those findings).

6

The defendant also argues that the totality of the circumstances---specifically, her age, her limited education, her lack of experience with the law, the length of the interrogation, and her lack of food and sleep---indicate her confession was involuntary. We do not agree.

In order to determine whether a defendant's waiver of <u>Miranda</u> rights was made voluntarily, knowingly, and intelligently, we must consider the totality of the circumstances surrounding the case. <u>State v. Benton</u>, 759 S.W.2d 427, 431-32 (Tenn. Crim. App. 1988). The wisdom of the defendant in deciding to make a statement, or his or her failure to foresee the effects of that statement, are irrelevant to the determination of a valid waiver. <u>See</u> <u>Harris v. Riddle</u>, 551 F.2d 936, 939 (4th Cir. 1977).

Here, the evidence at the suppression hearing showed that the defendant voluntarily confessed her involvement in Dalton's death and was arrested in Florida on April 6, 1995; appeared before a Florida judge on April 7 and 11; and traveled with authorities by plane to Tennessee on April 19, arriving in the evening. She was immediately read her <u>Miranda</u> rights, waived those rights at 10:53 p.m., was served with the capias charging her with first-degree murder at 11:15 p.m., and then was interviewed. The interview concluded by 1:30 a.m. on April 20.

At the time of her statement, the defendant was twenty-three years old, had completed only the eighth grade, and could read and write fairly well. She testified she had been previously charged with felony theft and had pled guilty without requesting the aid of an attorney. During the days leading up to her transfer to Tennessee, she did not eat or sleep much because she was not feeling well, but she has never claimed that her lack of food or sleep prevented her from appreciating the seriousness of her circumstances or understanding what was happening. She testified that she had been

7

read and had understood her <u>Miranda</u> rights in Florida and had voluntarily given a statement to the Florida authorities confessing her involvement in Dalton's death. She further admitted she understood at the time she was being brought back to Tennessee for charges involving Dalton's death, that Detective Johnson of the Knox County Sheriff's Department had informed her of her <u>Miranda</u> rights, and that she had waived those rights. She also testified that Detective Johnson had told her she would not need an attorney for the interrogation that followed, but Detective Johnson denied so advising the defendant. The defendant admitted that at no time was she coerced or forced to give a statement.

The trial court specifically discredited the defendant's testimony that Detective Johnson had advised her she would not need an attorney. The trial court also found that the defendant had been properly advised of her rights, had understood her rights, and had voluntarily given statements to the authorities. The evidence supports these findings. Considering the totality of the circumstances, there is simply no indication that the defendant's statement was anything other than voluntary. That being so, the trial court properly denied the defendant's motion to suppress.

Next, the defendant argues that the trial court committed reversible error by not allowing her to call co-defendant Halcomb to the witness stand, even though Halcomb would have merely invoked his Fifth Amendment privilege against self-incrimination because his trial was pending. The defendant fails to cite any authority to support her argument, thus waiving review of it. Rules of the Court of Criminal Appeals of Tennessee 10(b); <u>Killebrew</u>, 760 S.W.2d at 231. Even so, the defendant's argument lacks merit.

The propriety, scope, manner, and control of examination of witnesses is within the trial court's sound discretion. <u>State v. Harris</u>, 839 S.W.2d 54, 72 (Tenn. 1992).

"It is not error to refuse to force a witness to take the stand to claim his Fifth Amendment privilege in front of a jury, nor may a jury draw inferences from the decision of a witness to exercise his constitutional privilege against self-incrimination." Id. Here, the defendant claims she wanted to call Halcomb to the witness stand not just so the jury could see him invoke his Fifth Amendment privilege, but also to show the jury the difference between Halcomb's size and Dalton's size (even though the jury was told of this discrepancy in size) and to question him about topics that might not cause him to incriminate himself, such as his relationship with Dalton. Halcomb stood accused of the same crime as the defendant, and the record demonstrates that the defendant and Halcomb acted in concert to kill Dalton. By inference, then, almost anything Halcomb could have said was potentially incriminating. See State v. Zirkle, 910 S.W.2d 874, 890-91 (Tenn. Crim. App. 1995). Thus, the trial court properly refused to allow the defendant to call Halcomb as a witness. Harris, 839 S.W.2d at 72.

Finally, the defendant argues that the trial court erred in charging the jury with range of punishment, when the State first requested such an instruction after the conclusion of the proof. The defendant relies upon T.C.A. § 40-35-201(b)(1), which states, "In all contested criminal cases . . . upon the motion of either party, filed with the court prior to the selection of the jury, the court shall charge the possible penalties for the offense charged and all lesser included offenses." The defendant argues that because the State requested the instruction after jury selection, she was prejudiced because she was prevented during voir dire from questioning potential jurors about their beliefs regarding the length of punishment.

The defendant has not shown reversible error. At the conclusion of the proof, the State requested an instruction on the range of punishment for first-degree murder and all lesser included charges. According to § 40-35-201(b)(1), the trial court

9

was not required to give these requested instructions because the State had failed to request them prior to jury selection. Regardless, the trial court instructed the jury on the ranges of punishment for first-degree murder, second-degree murder, reckless homicide, and criminally negligent homicide. Even assuming the trial court erred in giving this instruction, the defendant has not suffered prejudice because she was convicted of first-degree murder, not any of the lesser-included offenses, and was sentenced to the minimum sentence for first-degree murder, life imprisonment. Thus, to the extent the trial court's decision to instruct the jury on the ranges of punishment might have been error, it was harmless. Tenn. R. Crim. P. 52(a).

Finding no merit in the defendant's arguments, we affirm her conviction and sentence.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
JOSEPH M. TIPTON, Judge

_____
DAVID G. HAYES, Judge

## D I S S E N T

I respectfully dissent. The majority holds that an indictment which references a lesser culpable mental state than is required by statute must be attacked pretrial or any complaint concerning the defect is waived. The majority bases its holding

on the curious notion that "[s]ince proof of 'knowing' conduct does not <u>necessarily</u> <u>disprove</u> 'intentional' conduct, the defect in the indictment is not of the character which would be classified as a defect that fails to charge an offense" (emphasis in original). The majority misapprehends the significance of the defects which the instant indictment contains.

Our criminal code provides that offenses consist of <u>both</u> the act and the culpable mental state which are statutorily proscribed. T.C.A. § 39-11-101. It further provides that indictments must

> <u>state the facts constituting the offense</u> in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.

T.C.A. § 40-13-202 (emphasis added). This provision is not merely a statutory nicety. It arises from our state and federal constitutions which require that an accused be informed of the nature and cause of the charges levied against him. <u>See</u> U.S.Const. amends. VI and XIV; Tenn. Const. art. I, § 9.

The culpable mental state which constitutes the <u>mens</u> <u>rea</u> element of evading arrest is "intentional," not "knowing." T.C.A. § 39-16-603(a) (1991). Thus the instant indictment does not, contrary to statutory requirement, state the facts which constitute the offense. Rather, it sets forth an act and a culpable mental state which (together) do not constitute an offense. In other words, the instant indictment "fails . . . to charge an offense." Tenn. R. Crim. Proc. 12(b). Accordingly, the defect was not waived by the defendant's failure to raise his objection pretrial. <u>Id.</u> Moreover, because it fails to charge an offense, the conviction based upon it is a nullity. <u>State v. Trusty</u>, 919 S.W.2d 305, 310 (Tenn. 1996).

11

The majority's holding allows the State to play fast and loose with indictments because, under its holding, so long as there is sufficient proof at trial of the required mental state, it matters not what mental state was alleged in the indictment. Our Supreme Court has noted, however, that "it is unnecessary to charge guilty knowledge unless it is included in the statutory definition of the offense." State v. Hill, 954 S.W.2d 725, 729 (Tenn. 1997) (emphasis added). Guilty knowledge is included in the statutory definition of evading arrest and it was therefore necessary to charge it. The State should not now be allowed to shirk its accountability for its mistake by crying "waiver."

Nor am I consoled by the indictment's reference to the relevant statute. Taken to its logical extreme, this line of reasoning will soon allow the State to allege nothing more in an indictment than that the defendant "violated Tennessee Code Annotated Section [insert appropriate statute here]." I do not think that this result is what the framers of our constitutions, much less the drafters of our current criminal code, had in mind.

Even if, however, the majority is correct in holding that mental states may be freely substituted for one another in indictments, I would find the instant indictment fatally defective on other grounds. The relevant count of the indictment provides in pertinent part that "on or about the 14th day of December 1993 . . . [the defendant] did unlawfully and knowingly flee from Sheriff Delphus Hicks and Deputy Doug Brown . . . known to [the defendant] to be . . . law enforcement officers from [sic] effecting [his] arrest." The statute which the defendant was thereby accused of violating provides as follows: "It is unlawful for any person to intentionally flee from anyone the person knows to be a law enforcement officer and the person: (1) Knows the officer is attempting to arrest the person; or (2) Has been arrested." T.C.A. § 39-16-603(a) (1991). Thus, the

12

crime of evading arrest consists of the following essential elements: (1) the defendant intentionally flees from persons he knows to be law enforcement officers <u>and</u> (2) the defendant knows the officers are attempting to arrest him or they already have arrested him. T.C.A. § 39-16-603(a) (1991). It is not a crime under this statute for a person to intentionally flee police officers because, for instance, he does not want to be questioned, he simply dislikes or fears officers, or because he enjoys taunting them. The crime is committed when a person flees in a deliberate attempt to escape arrest. Of course, such deliberate conduct requires that the person <u>know</u> an arrest is being attempted.

The indictment in the instant case makes absolutely no reference to the defendant's awareness that the officers were attempting to arrest him. Nor is it possible to logically infer the missing element from the words "from effecting [the defendant's] arrest." <u>Cf. Hill</u>, 954 S.W.2d at 727 (holding an indictment containing no reference to the <u>mens rea</u> element valid if it otherwise meets constitutional and statutory requirements and "the mental state can be logically inferred from the conduct alleged.") Nor is this element necessarily implied by the remaining allegations. <u>Cf. Marshall</u>, 870 S.W.2d at 538 (holding an indictment valid where a missing element of the offense is "necessarily implied" from the allegations made). Thus, while we do not doubt that the police officers were in fact attempting to arrest the defendant, there is no language in the indictment which establishes that the <u>defendant</u> knew or was aware of the officers' intent. As set forth above, the defendant may have been knowingly running from persons he knew to be police officers <u>without</u> knowing that they were trying to arrest him. Given the plain language of the statute, this omission is fatal.

Because the indictment charging evading arrest fails to allege the essential element that the defendant knew the officers were trying to arrest him, it cannot support

13

his conviction.  Accordingly, I would reverse the defendant's conviction for that offense and dismiss the charge.