# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 26, 2010 Session

## STATE OF TENNESSEE v. DEADRICK GARRETT

**Direct Appeal from the Criminal Court for Knox County**

No. 87576     Mary Beth Leibowitz, Judge

---

**No. E2009-02365-CCA-R3-CD - Filed February 11, 2011**

---

The defendant, Deadrick Garrett, was convicted of first degree premeditated murder and sentenced to life with the possibility of parole in the Tennessee Department of Correction. On appeal, he argues that the evidence was insufficient to support his conviction and that the trial court erred in excluding evidence regarding the victim's prior convictions and parole status. After careful review, we affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Bruce Poston, Knoxville, Tennessee, for the appellant, Deadrick Garrett.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case involves the murder of Rashad Miller, the half-brother of the defendant. The defendant was working on a Friday night when he received a telephone call from his mother, accusing the victim of raping the defendant's sister. The defendant also spoke to his sister, who confirmed the account. On Sunday night, the defendant armed himself with a knife, went to the victim's home, and confronted him. The victim allegedly made a crude statement about the defendant's sister, and the defendant struck the victim in the head. Before fleeing the home, the defendant stabbed the victim repeatedly with a knife.

Analysis

On appeal, the defendant raises the following issues: the evidence was insufficient to support his conviction; and the trial court erred in excluding evidence of the victim's prior convictions and in excluding the victim's parole status. First, we consider the issue of sufficiency of the evidence. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

The defendant argues that he did not have the requisite mental state to support a conclusion that the killing of the victim was premeditated. Specifically, he contends that the act was committed in the heat of passion or with a reckless state of mind. At trial, the nephew of both the defendant and victim testified that he lived with the victim at the time of the killing. He recalled that on the July 22, 2007, he woke up to a knock on the front door. He answered the door, and the defendant asked if the victim was at home. The nephew told the defendant he was not sure, but he could check. He did not recall seeing the defendant with a weapon and described the defendant as "calm." The nephew heard the defendant knock on the victim's door and heard the victim ask "who's there?" The nephew returned to his bedroom, shut the door, and turned on the television. About two minutes later, he

heard a loud "boom" and what sounded like "tusslin'" or "wrestlin'" in the victim's bedroom. He heard the victim's door slam and heard the defendant talking loudly as he walked out of the apartment. The victim called the nephew's name, but the nephew could not enter the bedroom because the door was jammed. He had to "barge in" and found the victim on his knees behind the door. The nephew asked his girlfriend to call the police while he stayed with the victim. The victim could not stand and struggled to breathe. The nephew witnessed the victim take his last breath. He observed a hole in the sheet rock that he believed was the result of the loud "boom."

An evidence technician of the Knoxville Police Department Forensic Unit testified that she responded to the crime scene. She observed a gouge mark on the exterior of the bedroom door that was consistent with someone holding a knife against the door from the outside. The furniture in the bedroom did not appear to have been disturbed. The only sign of a struggle was a large hole in the drywall behind the bedroom door. She opined that the bloodstains on the interior of the bedroom door were consistent with blood being thrown from a knife. She explained that the blood appeared to have hit the door and run down. There was also blood on the bed that appeared to have been flung. The victim's tee shirt remained in the bedroom and was saturated with blood. A broken piece of metal was found behind the bedroom door, and a knife was later recovered in a wooded area. The back portion of the knife had been broken off and was consistent with the piece found in the victim's bedroom.

The defendant executed a written waiver of his rights and gave a recorded statement. The defendant told police that his twelve-year-old sister had informed their family that the victim, who was their half-brother, had raped her on the Friday before the crime. The defendant said his mother called him at work to tell him what had happened. He told police that he "just lost it" when his sister told him about the rape. The police asked if the defendant was concerned that the victim would have a gun, to which the defendant responded that he was angry and felt "bullet proof." The defendant told police that they fought and crashed into the wall before falling to the floor. He said the victim jumped on top of him and told him to calm down. The defendant told police that he was frightened and that he began "sticking [the victim] in the stomach" with a stick. He denied using a knife. The defendant told police that killing the victim was in his mind when he went to confront him and that he went to the apartment with the intention of hurting the victim. The defendant turned himself in to police after attempting to conceal the weapon and shirt he was wearing during the crime.

The doctor who performed the autopsy testified that the victim died of multiple stab wounds, which totaled fourteen. The wounds were consistent with the victim and attacker facing each other. The victim also had wounds to his back consistent with moving away

from his attacker.

The defendant's sister testified that she was twelve years old in July 2007, and that she told her mother and the defendant that she had been raped by the victim. She testified that she, the victim, and the defendant had the same father. She recalled that her father was mad that she told her mother what had happened. She told the defendant what happened on the phone and recalled that he was mad. Even though she told the defendant that their father did not want to report the rape, the defendant insisted she go to the hospital and report the rape.

The defendant's mother recalled that the defendant was upset and angry and that he cried when he was told about the rape. She also testified that the defendant might have said that he stabbed the victim.

The defendant testified that two days after he learned of the rape, he went to see the victim and took a weapon. He said he took the knife because he was afraid of the victim. He testified that he punched the victim in the head after the victim made crude statements about their sister. He said that they struggled and that the victim got on top of him. He acknowledged stabbing the victim and then running from the room. He went to the home of friends and asked them to wash his shirt and dispose of the knife. He acknowledged that he only surrendered after attempting to destroy evidence.

On appeal, the defendant does not contest that he killed the victim. Rather, he argues that he killed the victim in the heat of passion or in a reckless state. Pursuant to Tennessee Code Annotated section 39-13-202, first degree murder is a premeditated and intentional killing of another. T.C.A. § 39-13-202 (a)(1) (2006). Premeditation is an act done after the exercise of reflection and judgment. Premeditation means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation. T.C.A. § 39-13-202(d). The existence of premeditation is a question of fact for the jury to determine and may be inferred from the circumstances surrounding the offense. *State v. Rosa*, 996 S.W.2d 833, 837 (Tenn. Crim. App. 1999) (citing *State v. Brown*, 836 S.W.2d 530, 539 (Tenn. 1992)).

In *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997), the Tennessee Supreme Court stated:

The elements of premeditation and deliberation are questions for the jury

which may be established by proof of the circumstances surrounding the killing. *Brown*, 836 S.W.2d at 539. There are several factors which tend to support the existence of these elements which include: the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime, and calmness immediately after the killing. *Id.* at 541-42; *State v. West*, 844 S.W.2d 144, 148 (Tenn. 1992).

When viewed in a light most favorable to the State, the evidence established that the defendant formed the requisite premeditation pursuant to the factors set forth in *Bland*. The defendant was angry with the victim and sought revenge for the rape of his sister. He acknowledged to police that: he thought about hurting or killing the victim; he took a weapon to the victim's home; and he stabbed the victim numerous times, left the scene without rendering aid to the victim, and attempted to destroy evidence of the crime. Sufficient proof was presented at trial to support the defendant's conviction for first degree premeditated murder.

Next, the defendant argues that the trial court improperly excluded evidence about the victim's prior convictions and status as a parolee. The trial court concluded that the evidence was not relevant to any material issue at trial. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Once the court concludes the evidence is relevant, the court should exclude the evidence if its probative value is substantially outweighed by its prejudicial effect. Tenn. R. Evid. 403; *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). A trial court's decision as to the relevance of evidence under Rule 401 will be reversed only upon a showing of abuse of discretion. *State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003).

The defendant argues that because he was not allowed to present evidence that the victim was on parole, he was denied the opportunity to present a theory of defense that he went to the victim to extract a confession so the victim's parole would be violated and he would be removed to custody quickly. The trial court concluded that the evidence of the victim's parole status was irrelevant to the issue of whether the defendant stabbed the victim to avenge his sister's rape. Exclusions of evidence may violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution even though the exclusions comply with rules of evidence. *State v. Flood,* 219 S.W.3d 307, 316-17 (Tenn. 2007). Principles of due process require that a defendant in a criminal trial have the right to present a defense and to offer testimony. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *State v. Brown*, 29 S.W.3d 427, 431 (Tenn. 2000). In *Washington v. Texas*, 388 U.S. 14 (1967),

the United States Supreme Court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

388 U.S. at 19.

The right to offer testimony, however, is not absolute: "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence. . . ." *Chambers*, 410 U.S. at 302. Rules of procedure and evidence are designed to assure fairness and reliability in the criminal trial process. *Id.* So long as the rules of procedure and evidence are not applied arbitrarily or disproportionately to defeat the purposes they are designed to serve, these rules do not violate a defendant's right to present a defense. *Flood*, 219 S.W.3d at 317 (citations omitted). Because "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," *Scheffer*, 523 U.S. 303 at 308, "[a]n evidentiary ruling ordinarily does not rise to the level of a constitutional violation," *State v. Rice*, 184 S.W.3d 646, 673 (Tenn. 2006). In determining whether an exclusion of evidence rises to the level of a constitutional violation, we are directed to consider the following: (1) whether the excluded evidence is critical to the defense; (2) whether the evidence bears sufficient indicia of reliability; and (3) whether the interest supporting the exclusion of evidence is sufficiently important. *Flood*, 219 S.W.3d at 317.

Here, the excluded evidence was not critical to the defense because it had little probative value. Even if the evidence was excluded in error by the trial court, the error was harmless in light of the evidence of the defendant's guilt. The evidence did not affect the outcome of the trial and, therefore, cannot be demonstrated to be critical to the defense. The reliability of the evidence was not an issue. The defendant is not entitled to relief on this issue.

Next, the defendant argues that the trial court erred in excluding evidence of the victim's prior conviction. He argues that the victim's prior conviction for aggravated assault with a handgun was relevant to demonstrate his fear of the victim. The trial court excluded the evidence as inadmissible because the defendant did not sufficiently establish a claim of self-defense.

The trial court may properly exclude the evidence as irrelevant. Because self-defense was not sufficiently raised by the proof, evidence of the victim's prior assault on a third party was irrelevant and inadmissible. Specific acts of the victim toward third persons are inadmissible to show that the victim had a reputation for violence. *State v. Jones*, 729 S.W.2d 683, 686 (Tenn. Crim. App. 1986). A defendant may testify regarding specific acts of violence by the victim against third persons in order to support a claim of self-defense. *State v. Reynolds*, 666 S.W.2d 476, 479 (Tenn. Crim. App. 1984). However, testimony of the victim's prior bad acts may not be introduced unless and until a claim of self-defense is sufficiently established in the record. *Williams v. State*, 565 S.W.2d 503 (Tenn. 1978).

The State filed a motion in limine before trial and asked the court to preclude the defense from making reference to the prior criminal history of the victim. The State explained that a victim's character for violence can only be introduced if self-defense has been raised by the proof and the court finds that the probative value of the evidence outweighs any prejudicial effect. The evidence demonstrated that the defendant was the first aggressor and nothing in the defendant's statement to police indicated otherwise. Counsel for the defendant argued that the information was relevant because it went to the defendant's mental state. He explained that the defendant confronted the victim with a knife because he knew the victim was dangerous and had a history of aggravated assault. The trial court agreed that there was no evidence that the victim was the first aggressor, which would be necessary in order to introduce the prior convictions, and determined the prior convictions to be irrelevant. The defendant testified at trial that he was the initial aggressor.

Because the defendant failed to sufficiently establish a claim of self-defense, the trial court properly denied his request to admit evidence of prior acts of violence by the victim. The defendant admitted he was the first aggressor when he struck the victim after the victim made a crude comment about their sister. The defendant sustained no wounds to suggest that he acted in self-defense. The defendant failed to show that the excluded evidence was probative of a material issue at trial, and the trial court properly excluded it as irrelevant.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE